DODGE TAYLOR v. B. A. WILLIAMS, as Tax Collector of Lake County, and GEORGE J. DYKES, as Clerk of the Circuit Court, and F. E. OWEN, Chairman GEORGE L. SINGLETARY, H. K. STOKES, H. H. HETHCOX and MANUEL SLOAN, as and constituting the Board of County Commissioners, and R. E. CRUMMER & COMPANY.

195 So. 175
Opinion Filed February 23, 1940

404

*Thos. B. Adams, Duncan, Hamlin & Duncan,* for Appellant;

*J. W. Hunter, Harry P. Johnson, Robert J. Pleus, D. C. Hull, Hull, Landis & Whitehair,* for Appellees.

WHITFIELD, J.—A resident citizen owner of described land located within each of several overlapping special road and bridge districts in 'Lake County, Florida, filed a bill in to be established with taxing authority to levy district taxes levied and assessed for the year 1938, and to enjoin future taxes against his land located in each of such overlapping districts to pay bonds issued by the several special road and bridge districts, respectively, for road construction, it being alleged that the bonds were illegally issued and are void. Other relief is also sought. The defendants filed no pleading. The court denied an injunction and dismissed the bill of complaint. Plaintiff appealed.

This suit is not to validate bonds under the statute, but it is brought by a taxpayer alleging illegality of the tax imposed for payment of bonds alleged to be illegal and void. Illegality in the contract for refunding bond fees is also alleged.

Questions 1 and 8 formulated by appellant in effect present contentions that the Constitution impliedly forbids statutes creating or authorizing road and bridge districts to be established, with taxing authority to levy district taxes and to issue district bonds for the construction or main-

tenance of public roads in the districts respectively; and that "the County of Lake had no power or authority under any general law or under any special law to execute or promise to pay such bonds and that the supposed original bonds attempted to be issued for these special road and bridge districts are not the bonds of the districts severally; that as to said districts they are void and without force or effect. The consequence is that the supposed refunding bonds involved in this case are, if anything, *original* contracts and void because never approved by any freeholder election. As a result of the illegality of both the original supposed bonds and the so-called refunding bonds all debt service levies made in 1938 for these special road and bridge districts are severally void."

Prior to the 1930 amendment to Section 6, Article IX, Constitution, regulating the issue of county, district and municipal bonds, various road and bridge districts in Lake County, Florida, were created or authorized by statute with statutory authority to issue district bonds for public road construction purposes and to levy taxes in the districts, respectively, to pay the bonds. Some special statutes like several of those in this case authorized district bond issues without an approving vote of the electorate prior to 1930.

It appears that the bonds were refunded in proceedings pursuant to a contract dated August 6, 1935, and additions thereto, and pursuant to resolutions adopted by the Board of County Commissioners of Lake County, Florida, April 6, 1936, approving adopting and confirming such contract; and that on August 7, 1939, another agreement was approved and resolutions adopted for another refunding of "all outstanding principal of the funded indebtedness of the county and all special road and bridge districts therein."

The Constitution provides for school districts, Sections

10 and 17, Article XII; and does not expressly or impliedly forbid the establishment of drainage, road and bridge or other districts, but "incorporated districts" are expressly referred to in Section 10, Article IX. Amended Section 6, Article IX, of the State Constitution was adopted in 1930, after many districts had been established throughout the State by or under statutory authority and after authority to issue bonds and to tax for district bonds and other purposes had been conferred upon and exercised by or for the districts by duly authorized officers for proper district purposes, all being done to secure local improvements or facilities. The 1930 amendment to the Constitution recognizes the existence of established districts in the State, and expressly regulates future issues of district bonds and refunding bonds. This organic amendment in effect approved the statutory policy of the Legislature authorizing local districts with bond and taxing authority for duly authorized district purposes, the Constitution not forbidding statutes establishing or authorizing the establishment of districts with authority to issue bonds and to levy taxes to pay the bonds, issued for public road construction and other district purposes. The construction and maintenance of public roads is for statutory determination; and it may be made in whole or in part a State or county or district purpose.

Districts are established by or under organic or statutory authority, nor for local governmental purposes as are counties and municipalities, but for the purpose of constructing or securing and maintaining public roads or other public improvements or facilities for local benefits to accrue therefrom to the inhabitants of each district and its citizens and taxpayers. See Jinkins v. Entzminger, 102 Fla. 167, 135 So. 785; Hopkins v. Special R. & B. Dist., 73 Fla. 247, 74 So. 310; Martin v. Dade Muck Land Co., 95 Fla. 530,.

116 So. 449; 'Lee, Compt., v. A. C. L. Ry., filed January 2, 1940. The taxes are not required to be measured by actual or immediate special benefits to lands or to the inhabitants of a district. See St. Louis & S. W. Ry. v. Nattin, 277 U. S. 157, 48 Sup. Ct. 438, 72 L. Ed. 830. The Tennessee and other authorities as to power of the legislature to create or authorize taxing districts, cited by counsel for appellant, do not control under the interpretation of the Florida Constitution.

The Constitution does not require all taxes to be levied by a statute, but "in pursuance of law;" and when a board of county commissioners is by statute authorized to "cause to be assessed and collected" a district tax for authorized district purposes, the county commissioners may by resolution require the tax assessor of the county to assess, and the tax collector of the county to collect, the authorized district tax for district purposes. The statutes here involved are not shown to be invalid or to be illegally applied in issuing bonds and levying taxes to pay the bonds.

Even if in some instance the amount of bonds authorized to be issued by county commissioners for district purposes is not specifically and expressly limited by statute, yet there may be implied limitations; and if appropriate and not excessive original bonds are issued and validated and sold and the proceeds used as provided by law for authorized district purposes, the abstract validity of the bonds, when not illegal or void for violation of organic law, may not, when validated and used as authorized, be challenged in the absence of fraud in which the bondholder participated. No clearly excessive issue of bonds of a particular district was duly shown. See principles announced in Getzen v. Sumter County, 89 Fla. 45, 103 So. 104; Paul Bros. v. Long Branch, etc., Bridge Dist., 83 Fla. 706, 92 So. 687.

Neither authorizing resolutions adopted, nor public road

refunding bonds issued, by or for a district without the required approving vote of the electorate of the particular road and bridge district can legally contain directly, indirectly or otherwise, any pledge or agreement or undertaking that will add to the security that was pledged in the original bonds for the payment of the bonds. Such road and bridge district refunding bonds must merely extend the time of payment of original bonds, with a continuation of the pledged security, though at a lower rate of interest if acceptable in exchanging refunding bonds for the original bonds. No doubtful or ambiguous provisions should be in a refunding bond. The original obligations alone may be included and extended. Such additional pledge or agreement or undertaking if included in the resolutions for issuing the bonds or in the bonds, violates amended Section 6 of Article IX of the Constitution unless the required approving vote of the electorate is had. Statutes cannot authorize such added pledge agreement or undertaking in issuing road and bridge district refunding bonds under amended Section 6, Article IX, Constitution, unless an approving vote of the electorate is obtained for such added authority or security.

When proceedings are brought in the circuit court under the statute to validate authorized county, district or municipal bonds, validation should be denied not only where illegality appears, but also where there are serious errors, defects or deficiencies in the proceedings taken for issuing the bonds or in the form or substance of the bonds. Courts should validate bonds only when their legality is established and their regularity in every important particular is also shown, so as to avoid as far as possible doubts as to the legality and regularity of the bonds as issued, and to inspire confidence in the bonds. But when such bonds have been validated, only questions of legality with reference to

organic requirements or prohibitions or absence of statutory power are considered by the courts in the absence of fraud.

In this case the statute authorized road and bridge district bonds to be issued by the board of county commissioners of the county in which the districts are located. The bonds were issued by the county commissioners pursuant to resolutions adopted by them, and the bonds under the resolutions were signed by the chairman and clerk of the board. In form the bonds, as shown by one quoted in the record, were issued in the name of "The County of Lake in the State of Florida for and on behalf" of "Special Road and Bridge District," etc. The tax obligation of the district and "the full faith, credit and resources of the said Special Road and Bridge District" are pledged for the payment of the bonds. The validating decree adjudged the bonds to "be valid and legal obligations against the said special road and bridge district." When the statute, the resolutions of the board of county commissioners for issuing the bonds, and the bonds as issued are considered together, it is clearly apparent that the board of county commissioners attempted to follow the meaning and purpose or intent of the statute in issuing the bonds. While a validation of the bonds as worded might well have been denied and the cause remanded for a more appropriate form to be used, yet as the original bonds were duly authorized, validated and sold, and the proceeds used for the authorized purpose, it is now too late to assert the bonds to be invalid in their entirety because of the form of the bonds, which form is not forbidden or fatally defective, but merely inaptly worded. The original bonds are not shown to be invalid under the controlling law when the original bonds were issued prior to the adoption of amended Section 6, Article IX of the Constitution in November, 1930.

The refunding bonds provided for by the resolutions of

April 6, 1936, were issued by "The Board of County Commissioners of the County of Lake in the State of Florida, and on' behalf of" the particular district, which is a more appropriate form than that used in the original bonds. In each case the obligor was and is the district for which the bonds were issued as authorized by the statutes.

After the original bonds were issued the State supplemented the district contract tax obligation by allocations of funds from the "second gas tax" levied by Chapter 15659, Acts of 1931; but such allocations are as to the bondholders a mere gratuity which may be terminated at any time. The district authorities have no authority to pledge such allocated funds, and any such provisions contained in a refunding bond are illegal and of no effect. (See State v. County of Citrus, 116 Fla. 676, 157 So. 4, 97 A. L. R. 431.) If severable, such illegal provisions may be regarded in law as eliminated from the face of the bonds, the remainder of the bonds standing, unless the record of the issuing and validating proceedings show an intent to violate the organic provisions, which might invalidate the entire bond notwithstanding the validating decree. In this case the illegal provisions are severable and the record of issue or validation shows no positive intent to violate the mandatory provisions of amended Section 6, Article IX, or other provision of the Constitution. The provision for "deferred interest" coupons is not authorized by law and should be eliminated. Outman v. Cone, filed December 23, 1939.

Referring to the form of road and bridge district refunding bond copied from the transcript of the record, the following is regarded as eliminated from the bonds:

"If this bond shall not have been called and retired as hereinafter provided, on or before six months prior to maturity, the full interest at the rate of six per cent per annum, less the amount theretofore paid from the date

hereof to such call date or such maturity date, shall also at that time be enforceable, collectable, and paid upon presentation and surrender of the special deferred interest coupon hereto attached. The right is hereby reserved to call and redeem all or any part of the issue of bonds of which this bond is one on any interest payment date, six months, or more, prior to maturity, according to the following terms and conditions: At par, plus accrued interest at the rate then prevailing, from date hereof to July 1, 1945; at par plus accrued interest at the rate then prevailing and plus one-half of the deferred interest, from and after January 1, 1946, to and including July 1, 1955; at par, plus accrued interest at the rate then prevailing and plus three-fourths of the deferred interest, from and after January 1, 1956, to and including July 1, 1960; and at par plus accrued interest at the rate then prevailing and plus the full amount of the deferred interest, from and after January 1, 1961, to and including January 1, 1963; and at maturity this bond shall be payable at par, plus accrued interest at the rate then prevailing and plus the full amount of the deferred interest * * *.

"* * * and the interest otherwise payable at maturity to make up the total of six per cent (except as all or part of same is to be paid in certain cases in the event of said call for redemption) shall be deemed to be waived by the surrender of this bond.

"* * * All rights and remedies which are available for the support and enforcement of the bond refunded by this bond shall be available for the support and enforcement of this bond."

The last quotation may include gas tax funds or other added security, and being ambiguous, should be eliminated. With the above quoted provisions eliminated, the refund-

ing bonds are not clearly shown to be illegal or void. The refunding bonds will then extend the original bond contract obligations.

Resolutions 10 and 11 contained in the contracts and resolutions for refunding the bonds are regarded as violative of Section 6, Article IX, Constitution, as amended, and are eliminated wherever they or either of them appear in the refunding bond contracts or resolutions. Such provisions being organically illegal, are not made valid by validating proceedings, and a taxpayer may challenge such organic invalidity.

Section 5, Article VIII, Florida Constitution as amended in 1900, provides for the division of each county into districts and for the election of one county commissioner from each of such districts, whose powers, duties and compensation shall be prescribed by law. Statutes authorizing the county commissioners to issue bonds and refunding bonds for the county and the road and bridge districts therein, require official action in the issue of bonds and in all matters pertaining thereto which are functions or duties involving discretion and fiduciary attention to conserve the best interests of the county, the road and bridge districts therein, and the citizens, residents and taxpayers thereof.

Appellant's Question No. XI:

"Is the new 2 per cent refunding agreement dated August 7, 1939, complained of in the Taylor bill (Taylor record, page 43) void, and should its performance have been enjoined?"

In the issuing of bonds to be paid by taxation, the official duties of the county commissioners include the administrative function of providing directly for the printing, approval and other legal or fiscal matters, not including mere technical or ministerial services which may be performed by employees. As shown by the resolutions adopted August

7, 1939, by the county commissioners the contract of August 7, 1939, states that R. E. Crummer & Company, "first party," is "a Delaware Corporation," and the county commissioners, "second party." As stated in the agreement of August 6, 1935, R. E. Crummer & Company "represents the holders of a substantial portion of the outstanding bonds of Lake County." The law does not contemplate or permit the appointment of a foreign corporation representing "the holders of a substantial portion of the outstanding bonds" as fiscal agent for the county or districts in managing or controlling any of the official functions involved in the issuing of refunding bonds. The contract of August 7, 1939, provides:

"That first party (R. E. Crummer & Company) shall defray all expenses incident to: (a) assembling and exchanging the bonds herein proposed to be refunded; (b) printing the said refunding bonds; (c) the representation of Second party (the county commissioners) in legal proceedings to validate said refunding bonds; (d) obtaining the approving opinion of nationally recognized bond counsel upon the procedure used for the issuance and validation of said Refunding Bonds, said counsel to be selected by First party; (e) all other expenses in connection herewith which may be approved by First Party."

Nor does the law permit the payment of money from the sinking funds of the county or districts as fees for a refunding agent. Pierce v. Isaac, 135 Fla. 101, 184 So. 669. When such an agent may legally be employed for services in no wise official in their nature, proper compensation for such service may be provided for as the law authorizes.

The refunding resolutions and contracts are not in accord with law, and the bill of complaint should not have been

dismissed. This is a taxpayer's suit and not a bond validating proceeding.

Decree reversed for proper proceedings and decree.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.