627 So.2d 520 (1993)
CHARTER REVIEW COMMISSION OF ORANGE COUNTY, FLORIDA, et al., Appellants,
v.
Ernie SCOTT, Richard T. Crotty, etc., Earl K. Wood, etc., Kevin Beary, etc. and Betty Carter, etc., Appellees.
No. 92-2645.
District Court of Appeal of Florida, Fifth District.
October 1, 1993.
Order Certifying Question on Rehearing December 10, 1993.
*521 Marcia K. Lippincott, Orlando and Mel R. Martinez, Martinez & Dalton, P.A., Orlando, for appellant Charter Review Com'n of Orange County, FL.
Debra Steinberg Nelson and Alton G. Pitts, Orlando, for appellees Crotty, Scott and Wood.
William E. Powers, Jr., Phillip P. Quaschnick, and Staci Bienvenu, Powers, Quaschnick & Tischler, Tallahassee, for appellee Beary.
No appearance for appellee Carter.
A. Bryant Applegate, Asst. County Atty., Orange County Attys. Office, Orlando, for appellant Orange County Bd. of County Com'rs.
GOSHORN, Judge.
The issue in this appeal concerns the constitutionality of a ballot question proposing an amendment to the Orange County Charter. The trial court determined that the ballot question was unconstitutional. We affirm.
On November 4, 1986, a majority of the voters of Orange County, Florida approved a charter form of government pursuant to article VIII, section 1(c) of the Florida Constitution. Section 702 of the charter, as amended by the voters in November 1988, required the Orange County Board of County Commissioners to appoint a charter review commission to study all phases of county government and to propose amendments or revisions to the charter for placement on the ballot in November 1992. Pursuant to that requirement, the county commissioners created the charter review commission in January 1991. After a series of hearings, the charter review commission filed its final report in July 1992, proposing several amendments to the charter through six ballot questions. "Charter Ballot Question # 1," which the charter review commission offered as follows, is the only ballot question at issue in this case:

QUESTION # 1
CREATE CITIZEN REVIEW BOARD; CHANGE SHERIFF, PROPERTY APPRAISER AND TAX COLLECTOR TO ELECTED CHARTER OFFICES
Shall the Orange County Charter be revised to: (a) create a Citizen Review Board with subpoena power that would review and make recommendations regarding citizen complaints and departmental investigations of the use of force or abuse of power by employees of the Sheriff; and (b) make the Orange County Sheriff, Property Appraiser and Tax Collector elected charter officers subject to Charter provisions and abolish their current status as "constitutional officers"?
 ____ YES
 ____ NO
The appellees filed suit seeking declaratory and injunctive relief concerning the constitutionality of this ballot question. After holding a hearing where the parties presented their legal arguments, the trial court held that the ballot question as posed was unconstitutional and struck the question from the ballot. The appellants filed a notice of appeal to this court, which invoked an automatic stay of the trial court's order pursuant to Florida Rule of Appellate Procedure 9.310(b)(2). The election was held on November 3, 1992, and Charter Ballot Question # 1 was passed by the Orange County voters.

PRELIMINARY QUESTIONS
First, we note that the fact that the ballot question was passed by the Orange County voters does not, in and of itself, cure any infirmity in the ballot question. In Wadhams v. Board of County Commissioners of Sarasota County, 567 So.2d 414, 417 (Fla. 1990) (alteration in original), the supreme court rejected a similar argument when addressing the issue of defective ballot summaries:
We also reject the Board's argument that the favorable vote cured any defects in the form of the submission. This defect was *522 more than form; it went to the very heart of what section 101.161(1) seeks to preclude. Moreover, it is untenable to state that the defect was cured because a majority of the voters voted in the affirmative on a proposed amendment when the defect is that the ballot did not adequately inform the electorate of the purpose and effect of the measure upon which they were casting their votes. No one can say with any certainty what the vote of the electorate would have been if the voting public had been given the whole truth, as mandated by the statute, and had been told "the chief purpose of the measure." As this Court has previously stated: "[T]he voter should not be misled and ... [should] have an opportunity to know and be on notice as to the proposition on which he is to cast his vote... . What the law requires is that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954) (emphasis added).
Following the reasoning in Wadhams, we hold that a favorable vote does not cure any defect in an unconstitutional ballot question.
Second, we find that the appellants' argument that a fundamental violation of their due process rights occurred under Florida Rule of Civil Procedure 1.440 because the trial court entered a final order before the cause was at issue and without setting the cause for trial, is without merit.[1] In this case, the facts were not in dispute and both sides recognized the need for a prompt determination of the legal issues. The record shows that after notice and hearing on the complaint and answer filed in this case, the trial court determined the issue of whether the ballot question was constitutional. Under the circumstances of this case, we hold that the trial court properly resolved this purely legal issue after hearing the full legal arguments of the parties. See Anderson v. Canvassing and Election Bd., 399 So.2d 1021, 1022 (Fla. 1st DCA 1981) (holding that a full evidentiary hearing was not required under the circumstances for the trial court to determine the validity of certain absentee ballots). Furthermore, the record shows that the appellants voluntarily proceeded with the hearing and fully participated without raising any objection under Rule 1.440. Thus, the appellants waived any error pursuant to Rule 1.440 and are precluded from raising this objection for the first time on appeal. See Coquina, Ltd. v. Nicholson Cabinet Co., 509 So.2d 1344, 1347 (Fla. 1st DCA 1987); Allstate Ins. Co. v. Gillespie, 455 So.2d 617, 620 (Fla. 2d DCA 1984). Therefore, we conclude that no fundamental or prejudicial error occurred in this case with respect to the appellants' due process rights.

SINGLE SUBJECT RULE
The primary issue on appeal raised by the parties concerns whether the "single subject" rule applies to ballot questions for amending county charters. The appellants acknowledge that article III, section 6 of the Florida Constitution provides the following single subject rule:
Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.
However, the appellants argue that this single subject requirement applies only to acts of the Florida Legislature and that no constitutional or statutory basis exists for applying the single subject rule to county charter amendments.
In response, the appellees argue that the single subject rule applies to county charter amendments and that the ballot question in the instant case violates the single subject rule. The appellees' argument begins with article VIII, section 1(g) of the Florida Constitution, which provides that "[c]ounties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors." The appellees then contend that under the single subject requirement in article III, section 6 of the Florida Constitution, the general law *523 of Florida requires the single subject rule to apply to all laws. As a result, the appellees argue that the ballot question to amend the Orange County Charter in the instant case violated the single subject requirement under the general law of Florida by addressing the four subjects of creating a citizen review board and changing three constitutional officers to charter officers in a single question, which unconstitutionally required the voters to choose between accepting or rejecting all four of the charter amendments in one ballot question.
We begin our analysis by recognizing that the single subject rule is well-established in the law of Florida.[2] In Antuono v. City of Tampa, 87 Fla. 82, 99 So. 324, 326-27 (1924), the Florida Supreme Court held that even in the absence of constitutional or statutory provisions, an election is invalid when two or more separate and distinct propositions are presented in a single ballot question because the voters are unable to make individual decisions on each proposition. The court in Antuono further stated:
This rule is amply sustained by reason and authority; it accords with the principles of fair dealing required of all officials in the exercise of public functions, powers, or duties; and it is not in conflict with, but conforms to the views expressed and the decisions made on the facts presented in the cases of Potter v. Lainhart, 44 Fla. 647, 33 South. 251 [1902]; Perry v. Town of Panama City, 67 Fla. 285, 65 South. 6 [1914]; Merrell v. City of St. Petersburg, 74 Fla. 194, 76 South. 699 [1917].
... [I]n grouping in one proposition, ... several separate, distinct, and unrelated objects ..., the voter is denied the substantial right and privilege of voting on the items severally. This is an injustice to the taxpayers of the city that is not contemplated by the charter acts and not permitted by the principles of law that govern in such cases, at least in the absence of contrary controlling provisions of law, that do not exist in this case. Note the policy of the state in separately submitting propositions to be voted on in the same election, as indicated by section 1, article 17, of the Constitution [current version at article XI, section 3 of the Florida Constitution].
Id.
Similarly, in State v. Dade County, 39 So.2d 807, 808 (Fla. 1949), the court applied the single subject rule to a ballot question submitted by the Dade County Board of County Commissioners to the voters of Dade County on the issue of whether to issue bonds for five separate bridges. While the court ultimately determined that the bond ballot question did not violate the single subject rule, the court held that in general, elections are invalid when held under restrictions that prevent the voter from casting an individual and intelligent vote. Id. Additionally, the court held that the law is well-established that if a vote concerns two or more separate and distinct propositions, each proposition should be stated separately and distinctly so that the voter may declare an opinion on each matter separately. Id.
Furthermore, in City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, 319 (1944), the Florida Supreme Court held that when an amendment to the Florida Constitution contains several propositions that concern different subjects which are unrelated with separate and distinct purposes, the amendment is unconstitutional. Id. 19 So.2d at 320. The Gray court further noted that the purpose of the single subject requirement is to prevent the situation where a voter, who wants to support a proposition which the voter considers good or wise, is obligated to vote for another proposition which the voter considers bad or foolish and would otherwise reject. Id. at 322. Even though the issue in the instant case is whether the single subject rule applies to proposed amendments to a county charter, rather than to the Florida Constitution, we hold that the *524 same public policy concerns apply in both situations because the law of Florida requires elections to express the free and independent will of the people through the means of a fair ballot. Thus, under the general law and public policy of Florida, the single subject rule must also apply to proposed county charter amendments.
Additionally, we find that article VIII, section 1(g) of the Florida Constitution and section 125.67, Florida Statutes (1991), provide authority for applying the single subject rule to ballot questions on county charter amendments. Under article VIII, section 1(g) of the Florida Constitution, charter counties have all of the powers of local self-government not inconsistent with general law, and under section 125.67 of the Florida Statutes in the chapter on county government, "[e]very ordinance shall embrace but one subject and matter properly connected therewith," and thus, these provisions create a constitutional and statutory basis for requiring county charter governments to comply with the single subject rule when proposing ballot questions to amend a county charter. For all of these reasons, we hold that Florida's single subject requirement applies to Orange County's charter form of government.
Finally, the appellants contend that even if the single subject rule applies in this case, the ballot question complied with the rule by addressing only naturally, logically, and reasonably connected matters. We cannot accept the appellants' argument. The proposed ballot question addresses two separate sections of the Orange County Charter by creating a citizen review board with subpoena power under section 801 of the charter and by changing the status of the property appraiser, the tax collector, and the sheriff from constitutional officers to charter officers under section 703 of the charter. We find that combining the proposed creation of a citizen review board with the proposed status change of three separate, independent, and unconnected constitutional offices in a single ballot question, involves at least two, if not four, separate and distinct amendments to the charter and unconstitutionally forces the voters of Orange County to choose all or none of the proposed amendments.[3] Accordingly, we affirm the trial court's final order finding that the ballot question was unconstitutional.
AFFIRMED.
DAUKSCH and COBB, JJ., concur.

ON MOTION FOR REHEARING
The motion for rehearing is granted for the purpose of certifying that the following question is one of great public importance:
WHETHER BALLOT QUESTIONS CONTAINING COUNTY CHARTER REVISIONS PROPOSED BY A CHARTER REVIEW COMMISSION ARE SUBJECT TO A SINGLE SUBJECT RULE?
DAUKSCH and COBB, JJ., concur.
NOTES
[1] The appellants urge that the procedure set forth in Rule 1.440 confers a "fundamental" due process right, not susceptible to waiver by their failure to object to the trial court's procedure. We reject this interpretation. Rule 1.440 merely provides procedural safeguards which may be waived. See Abrams v. Paul, 453 So.2d 826, 829 (Fla. 1st DCA 1984).
[2] In Florida, various constitutional and statutory provisions expressly apply the single subject rule to legislative acts, county ordinances, and municipal ordinances and resolutions. See Art. III, § 6, Fla. Const. (applying the single subject rule to legislative acts); Art. XI, § 3, Fla. Const. (applying the single subject rule to amendments by initiative to the Florida Constitution); § 125.67, Fla. Stat. (1991) (applying the single subject rule to county ordinances); § 166.041(2), Fla. Stat. (1991) (applying the single subject rule to municipal ordinances and resolutions).
[3] Since our decision on this issue resolves this case, we do not address the remaining issue concerning whether the ballot summary was misleading and defective.